NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**ALLEN H. MONROE,**
*Plaintiff-Appellee*

**v.**

**UNITED STATES,**
*Defendant-Appellant*

---

2021-1553

---

Appeal from the United States Court of Federal Claims in No. 1:18-cv-01059-PEC, Judge Patricia E. Campbell-Smith.

---

Decided: March 16, 2022

---

SCOTT W. MACKAY, The Law Offices of Scott W. Mac-Kay, LLC, Hebron, NH, argued for plaintiff-appellee.

WILLIAM PORTER RAYEL, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellant. Also represented by BRIAN M. BOYNTON, MARTIN F. HOCKEY, JR., ELIZABETH MARIE HOSFORD; SCOTT W. MEDLYN, Civil Litigation Directorate, United States Department of the Air Force, Joint Base Andrews-Naval Air

Facility, MD.

Doris Johnson Hines, Finnegan, Henderson, Farabow, Garrett & Dunner, LLP, Washington, DC, for amicus curiae National Veterans Legal Services Program. Also represented by Courtney Bolin, Kaitlyn Pehrson.

―――――――――――

Before Moore, *Chief Judge*, Clevenger and Chen, *Circuit Judges*.

Clevenger, *Circuit Judge*.

The United States appeals from the final decision of the United States Court of Federal Claims ("Claims Court"), granting Plaintiff-Appellee Allen H. Monroe's claim for attorneys' fees and expenses pursuant to the Equal Access to Justice Act ("EAJA"). *Monroe v. United States*, 150 Fed. Cl. 786, 789 (2020). Jurisdiction for the appeal lies under 28 U.S.C. § 1295(a)(3). For the reasons set forth below, we reverse.

I

Mr. Monroe began active duty service in the United States Air Force on February 16, 2000. In 2005, he was diagnosed with diabetes mellitus, type 1. In 2009, he became insulin dependent, and thereafter his medical condition was carefully monitored by the Air Force. On October 4, 2010, an Air Force physical evaluation concluded that Mr. Monroe's diabetic condition did not make him unfit for duty and directed that he remain on active duty without any restrictions on his physical activity.

On December 8, 2011, Mr. Monroe underwent an annual medical examination, referred to as an Initial Review in-Lieu-of Medical Evaluation Board ("RILO") and was not found unfit for duty. But on December 11, 2012, Mr. Monroe was evaluated again in another annual RILO, after which the examiner determined that Mr. Monroe was not

eligible to return to duty. Mr. Monroe was referred to the Department of Defense Integrated Disability Evaluation System ("IDES") for a determination of whether his diabetes rendered him unfit for duty. In IDES, the determination of whether a service member is fit for duty is made by a Department of Defense Physical Evaluation Board ("PEB").[1] On May 17, 2013, an Informal Physical Evaluation Board ("IPEB") found Mr. Monroe's diabetes condition

---

[1]    While fitness for duty is assessed by a PEB, if a service member is found unfit, the determination of the appropriate disability rating to be assigned to any unfitting conditions is made using disability ratings schedules established by the Department of Veterans Affairs. *See Kaster v. United States*, 149 Fed. Cl. 670, 673 (2020). At the times in this case, the Department of Veterans Affairs Schedule for Ratings Disabilities ("VASRD") for the Endocrine System, specifically for diabetes mellitus, rating 7913, provided in relevant part: "Requiring one or more daily injections of insulin and restricted diet . . . . 20 [percent]" and "[r]equiring one or more daily injections of insulin, restricted diet, and regulation of activities . . . . 40 [percent]." 38 C.F.R. § 4.119. "Regulation of activities" means "avoidance of strenuous occupational and recreational activities," and to meet this standard, "restriction on both types of activities is a means of showing the severity of the disability." *Camacho v. Nicholson*, 21 Vet. App. 360, 363 (2007) (establishing the test for 40 percent disability under rating 7913 of 38 C.F.R. § 4.119).

A service member with less than twenty years of service found unfit for duty due to physical disability due to diabetes mellitus rated at 20 percent is separated from service with severance pay only under 10 U.S.C. § 1203, but a disabled service member rated at or above 30 percent is entitled to military disability compensation retirement under 10 U.S.C. § 1201. For diabetes mellitus, the next VASRD highest rating over 20 percent is 40 percent.

to be an unfitting medical condition, in part because the condition limited possible deployments and recommended his discharge with severance pay and a 20 percent disability rating.[2] Mr. Monroe disagreed with the recommendation and requested an appearance before a Formal Physical Evaluation Board ("FPEB").

On July 16, 2013, Mr. Monroe's requested FPEB found his diabetes to be an unfitting medical condition, reasoning that his diabetes was inconsistent with military service because it is difficult to control and interfered with Mr. Monroe's ability to deploy worldwide. In particular, the FPEB stated that "diabetes is a disease that requires constant attention to diet, exercise, blood sugar levels, and insulin dosages and is very difficult to control under field conditions; his condition will permanently limit his ability to deploy and serve worldwide." The FPEB recommended discharge with a one-time severance pay award, based on a disability rating of 20 percent, calculated on the basis of his need for daily doses of insulin and restricted diet, and no regulation of his activities having been imposed. Because the FPEB failed to create and maintain an audio recording of its decisional meeting, Mr. Monroe requested and was granted another FPEB review. On November 12, 2013, the FPEB met again and confirmed the previous FPEB analysis and

---

[2]    In IDES, when a service member is found unfit for duty due to a medical disability, the IPEB forwards the case to the Department of Veterans Affairs Disability Rating Activity Site (D-RAS). The D-RAS evaluates the service member's condition using the pertinent VASRD to produce a disability rating that returned to the IPEB, which adopts and applies the D-RAS rating to determine whether the service member is separated with severance pay or retired with disability compensation. Air Force Instruction 36-3212, 1.10 Disability Ratings; *see also Kaster*, 670 Fed. Cl. at 673.

conclusion. Mr. Monroe disagreed with the FPEB discharge recommendation and, on November 23, 2013, requested his case be forwarded to the Secretary of the Air Force Personnel Council ("SAFPC") for review. On January 23, 2014, the SAFPC denied Mr. Monroe's appeal and directed his discharge with severance pay and a disability rating of 20 percent, due to the fact that Mr. Monroe's diabetes "will permanently limit his ability to serve worldwide." At Mr. Monroe's request, the SAFPC agreed to reconsider its decision. On June 26, 2014, the SAFPC again denied his appeal and directed his discharge with severance pay and a disability rating of 20 percent, due to his inability to deploy worldwide. On November 14, 2014, Mr. Monroe *pro se* filed an application for correction of his military records with the Air Force Board for Correction of Military Records (the "Board") and made an extensive submission of his arguments. He only sought reinstatement to active duty, on the ground that the Air Force erred in finding him unfit for duty and then unlawfully discharged him. In his submission, Mr. Monroe argued that the evidence failed to show that his diabetes affected his duty performance. His application did not challenge the 20 percent disability rating recommended throughout by the FPEB and the SAFPC. Instead, his submission represented to the Board that his exceptional health disqualified him for a medical disability retirement. While Mr. Monroe's application was pending, he was honorably discharged on January 22, 2015, with just under fifteen years of service.

On September 22, 2017, the Board released its decision, described hereinafter as the 2017 Board decision. The Board stated that it took notice of Mr. Monroe's complete submission in judging the merits of his case. Based on the written record, including the Air Force's position that "the ability to deploy weighed heavily in the decision-making process," the Board stated that "[i]nsufficient evidence has been presented to demonstrate the existence of error or

injustice . . . . [W]e agree with the opinions and recommendations of the Air Force offices of primary responsibility (OPRs) and adopt their rationale as the basis for our conclusion that the applicant has not been the victim of any error or injustice." As such, the Board denied Mr. Monroe his requested relief.

## II

On July 19, 2018, Mr. Monroe through counsel, filed suit against the United States in the Claims Court, seeking review of the 2017 Board decision on the ground that the Board failed to correct legal error committed by the Air Force in the previous SAFPC decisions. Mr. Monroe alleged that his discharge was based on a legally and factually erroneous assessment of his fitness for duty, entitling him to reinstatement to active duty with back pay and other benefits, pursuant to 37 U.S.C. § 204, the money-mandating statutory entitlement for military pay.

Mr. Monroe was retired pursuant to 10 U.S.C. § 1203, which mandates discharge with severance pay for a service member with less than twenty years of service who is deemed unfit for duty due to physical disability and whose disability is rated at 20 percent. A disability rating of 30 percent or greater would entitle such a disabled service member to monthly disability retirement pay, pursuant to 10. U.S.C. § 1201. Mr. Monroe's complaint did not plead any error in the computation of his 20 percent disability rating. His complaint also did not ask for any relief under 10 U.S.C. § 1201, the money-mandating statute he would have had to plead in order to vest the Claims Court with jurisdiction over a claim that erroneous calculation of his disability rating entitled him a disability rating of 30 percent or more, and thus disability retirement pay under § 1201. The only issue presented by Mr. Monroe's complaint was his alleged entitlement to reinstatement to active duty with all back pay and benefits, under 37 U.S.C.

§ 204, on the grounds that his discharge was unlawful due to error in finding him unfit for duty.

The government responded to Mr. Monroe's complaint by filing an unopposed motion voluntarily to remand the case to the Board to allow it to explain in more detail its responses to certain contentions Mr. Monroe raised before it and repeated in his Claims Court complaint. The 2017 Board decision had stated that it considered all of Mr. Monroe's contentions, but rejected them for the reasons stated in the government's submissions, without elaborating on the specific contentions. The government also recommended that Mr. Monroe should be given an opportunity on remand to submit additional issues, argument, and evidence to the Board. The government argued for the remand "in the interest of justice," not because of any legal error in the 2017 Board decision.

Accordingly, on October 16, 2018, the Claims Court ordered that the case be remanded and that the Board specifically explain (1) whether the SAFPC erred by failing to apply the benefit of any unresolved doubt regarding Mr. Monroe's fitness in favor of Mr. Monroe under Department of Defense instruction ("DoDI") 1332.38; (2) whether the SAFPC violated DoDI 1332.38 by considering the potential precedential effect of its decision when determining Mr. Monroe's unfitness; and (3) whether the SAFPC erred by failing to consider Mr. Monroe's prior deployments and the availability of waivers for Air Force members with assignment limitation codes.

Upon remand, the Board received a submission from Mr. Monroe that challenged the factual and legal grounds for the unfitness determination made earlier by the SAFPC. The Board also received the recommendation of its medical consultant, which found no error in the SAFPC decision, and a rebuttal submission from Mr. Monroe. Mr. Monroe only argued that the Air Force erred in finding him

unfit for duty, and that the error entitled him to reinstatement to active duty. He did not make any claim that, if the unfitness determination was correct, he should have been retired with a disability rating higher than 20 percent.

On April 29, 2019, the Board issued its decision as an addendum to its 2017 decision, described hereinafter as the 2019 Board decision. Responding to the criticism of its earlier decision for insufficient explanation, the 2019 Board decision addressed in detail the submissions and the three remanded issues. The 2019 Board decision explained that Mr. Monroe's case presented an unusual situation. Mr. Monroe's overall health was excellent, as shown by consistent excellent physical examinations and by his regular personal exercise regime, as exemplified by his ability to finish marathon runs. But his diabetic condition required insulin pump monitoring at least four times a day with the risk of complications in administration that, at worst, could result in diabetic ketoacidosis. Thus, although Mr. Monroe presented a reasonable risk for retention in garrison working environments, there remained unreasonable long-term risks for Mr. Monroe and for mission degradation under all possible environmental and operational deployments. The SAFPC had previously recognized the competing considerations of Mr. Monroe's overall good health and of the risks presented for maintenance of his diabetic condition in austere deployments, and had concluded that the latter made him unfit for duty. In sustaining that determination, the 2019 Board decision referred to portions of DoDI 1332.18 and 1332.45 for support.

Turning to the remanded issues, the 2019 Board decision found no error in not providing Mr. Monroe with the appropriate benefit of the doubt in deciding his fitness for duty because the evidence on that issue preponderated in the Air Force's favor. While the SAFPC decision in this case could be seen as setting a precedent, the Board did not see that fact as error, as each case is decided on its own merits.

On the third remanded issue, the Board concluded that the fact that Mr. Monroe had experienced previous foreign deployments without incident did not undercut the risks associated with possible future deployments with austere environments. The Board concluded that the record "did not demonstrate material error or injustice" in the Air Force's determination of Mr. Monroe's unfitness for duty and consequent discharge.

## III

On May 31, 2019, Mr. Monroe filed an amended complaint in the Claims Court, seeking review of the 2017 and 2019 Board decisions. His amended complaint reiterated alleged errors by the 2017 Board decision and found fault in the 2019 Board decision's responses to the three remanded issues. He also faulted the 2019 Board decision for relying on DoDI provisions that took effect after the decision by the Air Force to discharge him as unfit for duty. As in his first complaint, Mr. Monroe cited no error in the Air Force's assignment of a 20 percent disability rating, and requested no adjudication of, or relief for, his discharge with severance pay under 10 U.S.C. § 1203, based on his 20 percent disability rating, instead of a medical disability retirement with monthly compensation under 10 U.S.C. § 1201.

The government again filed an unopposed motion for remand to the Board. In its motion, the government conceded that the 2019 Board decision had "inappropriately considered" two DoDI provisions that were not in effect at the time the Air Force decided to discharge Mr. Monroe as unfit for duty. The government argued that this error did not make the overall decisions of the 2017 and 2019 Boards erroneous. In the interests of justice, the government also recommended further assessment by the Board of certain issues raised by Mr. Monroe's second complaint.

The Claims Court issued its second remand order on July 31, 2019. The order directed the Board to "complete

the following tasks": (1) to redetermine Mr. Monroe's fitness without regard to regulations or policies promulgated after June 26, 2014 (the date of the SAFPC's decision), (2) to address the composition of the July and November 2013 FPEBs to determine if having the same voting members for both FPEBs violated regulations, and if so whether the error was harmless, (3) to address Mr. Monroe's deployability by reconsidering the record concerning the Air Force's assessment of his availability for deployments and the possibility of waivers of deployment restrictions, (4) to address again whether the Air Force erred in emphasizing the precedential effect of Mr. Monroe's case on other service members (the concern being that the Air Force used Mr. Monroe's case to set a precedent to govern all other insulin dependent airmen), and (5) to address again whether the 2017 and 2019 Board decisions properly applied the benefit of the doubt rules in finding no error in the SAFPC's decision to order Mr. Monroe's discharge on unfitness grounds.

On remand, Mr. Monroe submitted arguments renewing his earlier allegations of error by the Air Force in finding him unfit for duty and addressing the matters remanded. In his August 12, 2019, submission the only relief he sought was correction of his military records to reflect his reinstatement to active duty effective January 22, 2015 (his discharge date), with continuous service to the date of correction, back pay, and all other appropriate benefits. His submission did not ask the Board to review the correctness of the disability rating assigned to him at the time of his discharge. The Board also received advisory opinions from its medical consultant and from SAFPC, addressing the issues specified in the second remand order.

The Medical Consultant Advisory Opinion, dated November 26, 2019, addressed the possible error by the 2019 Board decision in relying on regulations promulgated after Mr. Monroe's discharge. It did so by analyzing the entirety of Mr. Monroe's medical record under applicable regulations. Following the extensive analysis, the medical

consultant concluded that the 2019 Board decision could be sustained under standalone provisions in DoDI 1332.28, without any reliance on regulations in effect after Mr. Monroe's discharge.

Regarding Mr. Monroe's fitness, the medical consultant's recitation of Mr. Monroe's medical history notes an endocrinologist's comments, dated April 7, 2010, regarding Mr. Monroe's diabetes and its impact on his fitness for duty. The endocrinologist opined that Mr. Monroe should have his condition assessed annually, but "would be allowed to do physical training at his own pace and distance." During a test of his blood sugars on August 16, 2010, Mr. Monroe reported that he was "running 45 minutes 3 times per day, swims 1 day per week, and strength training 2 times per week." The medical consultant's report also referred to a September 13, 2010, opinion of an Army endocrinologist that Mr. Monroe "should be retained," noting ability to perform his duties, but recommending a permanent profile "limiting physical activity, diet and deployability." The medical consultant's report did not refer to any actual restriction having been imposed on Mr. Monroe's physical activity following the second endocrinologist's recommendation. Mr. Monroe's medical records included an FPEB determination on October 4, 2010, which stated that, based on multiple statements as to Mr. Monroe's functionality, he had "no duty restrictions and has not been precluded from performing support duties or fitness activities." The medical consultant's report noted that a December 19, 2012, record documented Mr. Monroe's successful completion of a marathon. The report further noted that "[a]though early on, an Army provider recommended 'restricted activity,' the applicant [Mr. Monroe] continued to participate in the intense activities he enjoyed, e.g., running several miles, sometimes several times per day or week." As the medical consultant noted, Mr. Monroe's physical ability to endure the rigors of service came at a price, meaning notwithstanding his excellent physical

condition even with diabetes, his condition rendered him unfit for duty in all possible deployments. The medical consultant's report did not suggest the possibility that, based on the single recommendation for restricted activity on September 13, 2010, Mr. Monroe's 20 percent disability rating may have been incorrect. The medical officer opined in conclusion that no error existed in the 2017 and 2019 Board decisions sustaining Mr. Monroe's discharge at a 20 percent disability rating.

The SAFPC provided opinions to the Board on the issues raised by the second remand order concerning deployments, precedential effect and the benefit of the doubt. On each, the SAFPC explained its view that no error had been committed in the assessment of Mr. Monroe's fitness for duty.

On December 6, 2019, Mr. Monroe replied to opinions of SAFPC and the medical consultant, challenging the conclusions in those opinions that no error had been committed by SAFPC in deciding Mr. Monroe's case in order to set a precedent for other cases, or in application of the benefit of the doubt, or in determining that Mr. Monroe was not entitled only to a waiver of deployability restrictions. In response to the Medical Consultant Advisory Opinion, Mr. Monroe, for the first time in the entire proceedings, pointed to the single reference in his medical history recommending a regulation of his activities, and argued that the unadopted recommendation of restriction of activities would warrant compensable disability retirement under 10 U.S.C. § 1201. Mr. Monroe stated that, should the Board deny his application for restoration to active duty, at least his records should be corrected to reflect his placement on the permanent disability retired list with a 40 percent disability rating effective and retroactive to January 22, 2015.

On January 15, 2020, the Board issued its second addendum decision, described hereinafter as the 2020 Board decision. The Board noted that Mr. Monroe, in addition to

his long-standing contention that Air Force error in his fit-
ness for duty assessment required his reinstatement to ac-
tive duty, with all appropriate back pay and allowances,
requested that "[i]n the alternative, he be retired from the
Air Force with a 40 percent disability rating."

The 2020 Board decision discussed each of the issues
remanded to it by the Claims Court. The 2020 Board deci-
sion stated that it adopted the recommended opinions of its
medical consultant and the SAFPC, and explained the rea-
sons why no error had been shown on any of the remanded
issues. Because Mr. Monroe makes no challenge to the
2020 Board decision, we need not repeat the rationales
adopted by the Board for finding no error with regard to
the remanded issues regarding the Air Force's determina-
tion that Mr. Monroe was unfit for duty and therefore sub-
ject to discharge. Although the Board found no error in the
unfitness determination that led to discharge, it concluded
that "partial relief is warranted" with regard to Mr. Mon-
roe's disability rating. Towards the end of its decision, the
Board turned to the "risk to himself and/or others" possible
in austere deployments and stated:

> The applicant appears to have had a support sys-
> tem in place at his local base; however, the Board
> believes that at a deployed location, with changing
> physical activity and likely change in diet, the risk
> would be higher. Likewise, the same risk makes
> the argument for a higher disability rating of 40
> percent. As such, the Board believes the interest of
> justice can best be served by medically retiring the
> applicant with a 40 percent disability rating retro-
> active to 2015. The Board believes the recom-
> mended relief is appropriate to the circumstances
> in this case and constitutes full and fitting relief.

The 2020 Board decision did not reference the only pos-
sible basis in the record for legally raising the 20 percent
disability rating to 40 percent, which is the September 13,

2010, unadopted recommendation for limitation of physical activity. Nor did the 2020 Board decision in any way suggest legal error by the Air Force in not having increased his disability rating to 40 percent. We may assume that if the 2020 Board decision's rationale for partial relief was to correct legal error in misapplication of the VASRD disability rating requirements, the decision would have said just that.[3] Instead, the 2020 Board decision reflected the injustice of the situation that Mr. Monroe's overall excellent health came at a high cost to him, in that the need to avoid risks and to provide the right care for a disease that did not limit his activity meant that he was not fully deployable and thus unfit for duty.

Following the 2020 Board decision, Mr. Monroe moved to dismiss his complaint voluntarily, and the Claims Court granted his motion on February 6, 2020. Shortly thereafter, Mr. Monroe filed a motion for attorneys' fees and expenses under EAJA.

IV

EAJA provides an exception to the general rule that plaintiffs cannot recover attorneys' fees and expenses against the United States. *Scarborough v. Principi*, 541

---

[3]    The Armed Service Boards for Correction of Military Records, here the Air Force Board, are charged with the responsibility to correct military records when "necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). The two grounds for correction of military records are not the same. Error means legal or factual error, and injustice is "treatment by the military authorities, that shocks the sense of justice, but is not technically illegal." *Reale v. United States*, 208 Ct. Cl. 1010, 1011–12 (Ct. Cl. 1976) (unpublished) (this distinction expressly adopted by the Court of Claims sitting *en banc* in *Sanders v. United States*, 594 F.2d 804, 813, n.12 (Ct. Cl. 1979).

U.S. 401, 404 (2004). In relevant part, EAJA provides that "a court shall award to a prevailing party . . . fees and other expenses . . . unless the court finds that the position of the United States was substantially justified . . . ." 28 U.S.C. §2412(d)(1)(A). The plaintiff bears the burden of establishing status as a "prevailing party," and where that test is met, the United States bears the burden of establishing that its position was "substantially justified." *Doty v. United States*, 71 F.3d. 384, 385 (Fed. Cir. 1995). In many cases, there is a dispute over whether a plaintiff is a "prevailing party," and this issue has been particularly in question when remands have been involved in the underlying litigation. *See Former Employees of Motorola Ceramic Prods. v. United States*, 336 F.3d 1360 (Fed. Cir. 2003). In this case, the government initially disputed that Mr. Monroe is entitled to "prevailing party" status, but the Claims Court disagreed, holding that Mr. Monroe is the prevailing party in this case. The government does not appeal this ruling by the Claims Court, and thus we need not pause before addressing the only issue before us, which is whether the Claims Court erred in holding that the government failed to show that its position was substantially justified.

Whether a government position is substantially justified is measured by looking back at the government's stance throughout the proceedings, including all administrative proceedings related to the civil action, and the government's position is viewed as a whole, with one "threshold determination for the entire civil action to be made." *Commissioner v. Jean*, 496 U.S. 160, 159 (1990). In *Jean*, the Supreme Court emphasized the need for a singular assessment of the government's position in the whole of the case by holding that the government can be unjustified in individual matters and still justified on the inclusive whole of the case. *Id.* at 161–62. Further, "substantially justified" does not mean "justified to a high degree, but rather 'justified in substance or in the main,'—that is, justified to a degree that could satisfy a reasonable person."

*Pierce v. Underwood*, 487 U.S. 552, 565 (1988). More particularly, "a position can be justified even though it is not correct, and . . . it can be substantially (i.e., for the most part) justified if a reasonable person would think it correct, that is, if it has a reasonable basis in fact and law." *Id.* at 566, n.2.

In sum, when deciding the substantial justification issue, "trial courts are instructed to look at the entirety of the government's conduct and make a judgment call whether the government's overall position had a reasonable basis in both law and fact." *Chiu v. United States*, 948 F.2d 711, 715 (Fed. Cir. 1991). Where an award is ordered, the court's decision that the position of the government was not substantially justified, when appealed as in this case, is reviewed for abuse of discretion. *Pierce v. Underwood*, 487 U.S. 552, 557–63 (1988). Abuse of discretion is shown if the court "erred in interpreting the law or exercised its judgment on clearly erroneous findings of material fact," *Chiu*, 948 F.2d at 713, or "make[s] a clear error of judgment in weighing relevant factors." *DGR Assocs., Inc. v. United States*, 690 F.3d 1335, 1340 (Fed. Cir. 2012). Our task now is to apply this standard to the decision of the Claims Court that the government's overall position in this case was not substantially justified.

V

Mr. Monroe's EAJA motion argued that the government's position was not substantially justified for two reasons. First, Mr. Monroe pointed to the two remand orders, arguing that "the errors committed by the [Board] that necessitated the two remands of Mr. Monroe's case show that the government's position was not clearly reasonable in view of the law and the facts." Second, the government's position was not reasonable because "the [Board] persisted from 2017 through 2019 in pressing a legal or factual position [regarding Mr. Monroe's disability rating], as is evident from the [B]oard's abrupt reversal in January 2020."

The government responded to the reasons advanced by Mr. Monroe and argued that the record as a whole showed its position in the case to be substantially justified. As for the two remands to the Board, the government argued that the first remand to consider unexplained matters did not mean the initial Board had acted arbitrarily, because its decision showed that the Board had considered the full case and gave reasons for its decision by adopting the Air Force's arguments as the basis for its conclusions, citing *Melendez Camillo v. United States*, 642 F.3d 1040, 1044–46 (Fed. Cir. 2011) (failure to mention specific matter in decision does not mean matter was not considered), and *Hartman v. Nicholson*, 483 F.3d 1311, 1315 (Fed. Cir. 2007) (same). As for the second remand, the government admitted that the Board's first remand decision had relied on an incorrect regulation, but that error was determined to be harmless and thus inconsequential by the 2020 Board decision, and Mr. Monroe did not challenge the Board's resolution of the remanded issues.

On Mr. Monroe's second unreasonableness reason, the government pointed out that the first time Mr. Monroe ever raised and questioned the propriety of his 20 percent disability rating was during the administrative proceedings on the second remand. Because before the Board, "the

applicant has the burden of proving sufficient evidence of material error in injustice," 32 C.F.R. § 865.4(a), and the Board determines if "the applicant has demonstrated the existence of a material error or injustice," 32 C.F.R. § 865.4(h)(4), the government argued that the 2017 and 2019 Board decisions were not "pressing a tenuous factual or legal position" by not addressing the issue of whether Mr. Monroe's disability rating should have been higher than 20 percent, because he had not raised the issue before 2020, but in fact had represented to the 2017 Board that he did not qualify for a disability retirement. Mr. Monroe's response to the government's defense of its reasonableness did not disagree with the government's assertion that the Board need only resolve matters presented to it. On the merits of the disability rating, the government cited the legal requirements for the next higher rating, 40 percent, which required "regulation of activities," meaning "avoidance of strenuous occupational and recreational activities." 38 C.F.R. § 4.119. Given Mr. Monroe's top physical assessment scores and his unrestricted marathon running, the government argued it was legally justified in maintaining the 20 percent disability rating, until the Board in the interests of justice increased the rating to a compensable level.

## VI

After review of Mr. Monroe's fee application, the government response, and Mr. Monroe's rebuttal, the Claims Court ruled in Mr. Monroe's favor, finding the government's position not substantially justified and awarding Mr. Monroe $50,881.27 in attorneys' fees and expenses. *Monroe*, 150 Fed. Cl. at 794.[4]

---

[4]   The government's appeal argues primarily that its overall position was substantially justified, warranting reversal of the Claims Court's award of attorneys' fees and

The Claims Court's decision was taken on the basis of the briefs describing the arguments made by the parties. As noted above, Mr. Monroe argued a lack of justification on the two grounds identified in his EAJA motion: alleged errors associated with the two remand orders and the error of not having increased Mr. Monroe's 20 percent disability rating sooner in the Board review process. The court stated that it "agrees with plaintiff that defendant's position was plagued by agency errors and therefore could not have had a reasonable basis in law and fact." *Monroe*, 150 Fed. Cl. at 792 (citing *Chiu*, 968 F.2d at 715). Further, the court found that "[p]laintiff has been forced to litigate defendant's [disability rating] position since the Air Force's determination in 2014, which the Board ultimately determined was faulty," by "pressing a tenuous factual or legal position" through the first remand position. *Id.* The government takes issue with the court's finding that multiple errors "plagued" the process by which the Air Force found Mr. Monroe unfit for duty and the process by which three Board decisions affirmed the assessment that Mr. Monroe's diabetes made him unfit for duty. As for whether the three grounds for the first remand showed agency error, for the 2017 Board decision not having specifically addressed those matters, the record shows that the 2017 Board had before it the complete position of the parties, and took notice of those positions in making its decision. As such, the government argues that the 2017 Board committed no

---

expenses. In the alternative, the government argues that attorney time should be divided between time spent challenging the unfitness for duty issue and the time spent on the disability rating issue, thereby substantially reducing the attorney fee award. Because we conclude that the Claims Court abused its discretion rejecting the substantial justification of the government's overall position in the case, we need not address the government's alternative argument.

error. The government concedes that the second remand to the Board was necessary because of legal error by the 2019 Board decision, as the court found. As for this single agency error, the government points out that the 2020 Board decision concluded that the admitted error had not affected the proceedings because properly applied regulations supported the unfitness decision, and Mr. Monroe has not challenged that conclusion.

With regard to the disability rating issue, the government emphasizes that the burden lies with the service member to present his case to the Board, and the Board does not err when it does not address issues not presented to it. The record is undisputable that the issue of the correctness of the 20 percent disability rating was only raised before the 2020 Board, not at any previous time, and Mr. Monroe even represented to the 2017 Board that he did not qualify for medical disability retirement. When the issue was at last put before the 2020 Board, the record evidence showed one medical reference in September 2010 suggesting possible need for restriction of Mr. Monroe's physical activities and other contrary contemporaneous evidence against restriction, and the consistent reference to his otherwise exemplary physical fitness and ability to complete marathon runs. In the government's view, it is clear that the 2020 Board's rationale for increasing Mr. Monroe's rating to 40 percent was not that the record facts satisfied the legal test for the increased rating stated in the VA ratings schedule, but instead that relief for Mr. Monroe was deemed necessary "in the interest of justice."

VII

In this case, the Claims Court made its judgment call that the government's position was not substantially justified because, with regard to the two remand proceedings, the government's position was "plagued by agency errors." On the question of Mr. Monroe's VASRD disability rating,

the Claims Court found that the Boards continued "pressing a tenuous factual or legal position through the first remand decision," which forced Mr. Monroe to litigate [the disability rating issue] from 2014[5] to 2020 to achieve an increased disability rating that would afford him a disability retirement compensation.

We first address the alleged errors by the government in connection with the two remands. Somewhat like the style of the 2017 Board decision, on this issue the Claims Court did not identify the specific agency errors in connection with the remands, but instead stated that it "agrees with plaintiff," *Monroe*, 150 Fed. Cl. at 792, on the issue.

Mr. Monroe argued the 2017 Board decision was arbitrary and capricious for failure to address the three issues that were remanded, citing *Frizelle v. Slater*, 111 F.3d 172 (D.C. Cir. 1997). That case involves the Coast Guard Board for Correction of Military Records and the question of whether the Board commits error by failing to address arguments made to it. The court first set forth the test for whether a Board decision is arbitrary: "All that is required is that the Board's decision 'minimally contain a rational connection between the facts found and the choice made.'" *Frizelle*, 111 F.3d at 176–77 (quoting *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). A Board thus errs when it "has not given 'a reason that a court can measure' for its decision." *Id.* In *Frizelle*, the decision of the correction board had failed to respond to two of Frizelle's arguments, and with no rationale given for rejection of the arguments, the court held the board's decision to be arbitrary. *Id.* at 177. Mr. Monroe relies on *Frizelle* to show agency error by the 2017 Board, and because the Claims Court adopted Mr. Monroe's

---

[5]   The 2014 date refers to the SAFPC June 26, 2014, decision, which stated the government's position that Mr. Monroe's disability warranted a 20 percent rating.

arguments, we assume it similarly relied on *Frizelle* to show one of the "plague" of errors. *Frizelle*, however, actually supports the government on this issue. The 2017 Board decision did not fail to consider any argument made by Mr. Monroe. Instead, the 2017 Board fully considered Mr. Monroe's submitted arguments, fully considered the submitted arguments made by the Air Force and agreed with the arguments made by the Air Force. The 2017 Board gave a rational connection between its decision and the submissions made to it, and we, as well as the Claims Court, were given the reason by the 2017 Board to "measure its decision." Furthermore, in *Melendez Camillo*, this court found no error in the decision of a corrections board that considered the service member's complete submission issues but failed to specifically discuss a particular issue. *Melendez Camillo*, 642 F.3d at 1045. The Claims Court thus erred by misapplying *Frizelle* and overlooking the government's reliance on *Melendez Camillo* to find agency error in connection with the order remanding the 2017 Board decision.

With regard to the agency error that required the second remand, namely reliance by the 2019 Board decision on regulations that post-dated the SAFPC June 26, 2014, decision, the government conceded that such reliance was error. The 2020 Board decision concluded that the Air Force's unfitness decision was free of error based on regulations and policies in force as of the date of the SAFPC decision. One harmless error does not amount to a plague of errors.

The Claims Court's second reason for finding the government's position not substantially justified fares no better. The record clearly belies any fact finding that Mr. Monroe was forced to litigate the disability rating issue from 2014 to 2020 because of a tenuous factual or legal position taken by the Air Force or the 2017 and 2019 Boards. Mr. Monroe's initial application to the 2017 Board did not challenge the 20 percent disability rating assigned to him at his discharge. Indeed, in his presentation to the 2017

Board, he expressly represented that he did not qualify for disability retirement, which meant that he did not meet the VASRD requirement for 40 percent disability because his record did not show that his physical activities had been restricted. The only evidence in the record that could have supported a 40 percent rating was one endocrinologist's suggestion for restriction of activity, which was not enforced, and which was preceded and followed by copious contemporaneous attestations that Mr. Monroe did not require, and was not given, restriction of activities. The position taken by the Air Force, and accepted by the 2017 and 2019 Board decisions, was that the factual record showed Mr. Monroe as entitled only to a 20 percent disability rating because of his need for daily insulin injections and a restricted diet. From 2014 through the 2020 Board decision, the government did not stand in Mr. Monroe's way to oppose any challenge he might have raised to the assigned 20 percent disability rating. On this factual record, no evidence supports a finding that the government forced Mr. Monroe to litigate the issue by pressing tenuous factual or legal grounds over a long period of time. The Claims Court's finding on this issue is clearly erroneous.

In sum, we conclude that neither ground asserted by the Claims Court to find the government's position not substantially justified is correct. Looking back at this extended litigation and assessing the government's position as a whole, there is but a single instance of agency error, which necessitated a second remand to determine if the 2019 Board decision had improperly relied on regulations that post-dated Mr. Monroe's discharge. And that error proved to be harmless when the 2020 Board decision sustained the Air Force's decision without reliance on the post-dated regulation. From 2014 to 2020, Mr. Monroe fought to have his unfitness for duty determination reversed, and to be reinstated to active duty. His legal challenges in the Claims Court related solely to his claim to reinstatement to active duty, and virtually all of his (and the government's)

submissions to the three Boards dealt with the claim to reinstatement. Only at the end of the proceedings did Mr. Monroe request alternative relief, in the form of a higher disability rating, and the 2020 Board promptly granted the relief in the interests of justice, without objection from the Air Force.

Applying our standard of review, we hold that the Claims Court abused its discretion in making its judgment call, due to its errors in faulting justification for the government's overall position. Accordingly, we reverse the final decision of the Claims Court awarding attorneys' fees and expenses to Mr. Monroe, and remand the case for dismissal of Mr. Monroe's EAJA motion.

## REVERSED AND REMANDED

### COSTS

No costs.